{¶ 45} I respectfully dissent. The majority correctly states that in a highincome scenario, "the appropriate standard for the amount of child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." (Internal quotations omitted.) Berthelot v. Berthelot,154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 24. As such, the question to be decided by a trial court is: "What is that standard of living and what total amount is necessary in order to maintain it?" Upon answering that question, a trial court could then proceed to allocate child support to each of the parties as appropriate for each case. However, under the reasoning employed by the majority, a trial court may determine, without any clear rationale, that maintaining the standard of living enjoyed during the marriage "would be unjust and inappropriate and would not be in the best interest of the children[.]" See R.C. 3113.215.
 {¶ 46} I agree that a trial court must tread lightly in making a child support award in high income cases to avoid the appearance of transforming child support into a mechanism for equalizing incomes. SeeBryant v. Bryant (Jan. 28, 1999), 5th Dist. Nos. 97CA7 98CA1. However, such is not the case here. Absent any deviation from the guidelines, with the support added to appellant's income and deducted from appellee's, appellant's income would be $174,052.30 and appellee's income would be $573,062.45. For the reasons below, I cannot agree with the majority that such an award may encroach on appellant's own obligation to support her children.
 {¶ 47} The majority has determined that "couched in the determination of child support for high-income families should be a consideration" of the necessaries of the children. The requirement that a parent provide necessaries for a child should have a minimal impact in a case such as this. It is not necessary for appellant to assert that her child support does not provide ample income to provide her children with necessaries. Rather, the statute at hand, R.C. 3113.215, specifically addresses providing child support in an amount to allow the children to continue in their current standard of living. As the majority states, awards in cases such as these nearly always exceed the amount necessary to simply provide for the children. As such, appellant need not argue that her children are not being provided with necessaries. Instead, she properly argued that based upon the current support order, the children could not maintain the standard of living they enjoyed during the marriage.
 {¶ 48} Simply put, the trial court was presented with the issue of who should be responsible for maintaining the children's standard of living. Appellant argued below that appellee was not paying his fair share towards this standard, and that as a result she was paying a disproportionate share of the support costs. This disproportionate distribution is evident from the trial court's prior decisions. As noted by the majority, this matter has come before the trial court on several occasions. However, despite a $150,000 increase in appellee's income, his support obligation has remained the exact same figure. As such, appellee has progressively paid a smaller percentage of his income to support his children while the proportion of appellant's income dedicated to support has remained constant.
 {¶ 49} In its first calculation of support, the trial court deviated downward from the child support guidelines by $3,833.00. Under the same set of circumstances, other than appellant's increase in income, the trial court deviated downward from the child support guidelines by $5,785.64. I cannot agree that these deviations are justified by the trial court simply stating that it considered the factors required by R.C. 3113.215. As the majority notes, the trial court reiterated the same reasons for its downward deviation in both support orders, yet the deviation amounts differ by $1,952.64 a month. As such, appellee's yearly support obligation was reduced by $23,431.68 without the trial court justifying any specific portion of the deviation.
 {¶ 50} The majority classifies appellant's argument on this issue as maintaining "that the support obligation should increase in amount accordingly with any increase in income" and goes on to state that such a contention lacks any legal authority to support it. However, R.C. 3113.215
requires a trial court to examine the financial resources of each parent before determining a support obligation. The trial court was presented with evidence that appellee's income had increased by roughly $150,000. Yet, the trial court seemingly ignored this increase by calculating support at the same level as it previously had when appellee's income was lower and by increasing the downward deviation from the support guidelines.
 {¶ 51} The amount calculated utilizing the statutorily prescribed worksheets and schedules are presumed to be the correct amount of child support due. R.C. 3115.215(B)(1); Mallin v. Mallin (1995),102 Ohio App.3d 717, 722. Thus, presumably, the statutory calculations result in a support award which is in the children's best interests and reflect a standard of living comparable to that the children would have enjoyed had their parent's marriage remained intact. See, Bowen v. Thomas (1995), 102 Ohio App.3d 196, 201-02. Therefore, the burden of proving that the basic support schedule is improper rests on the party who seeks deviation. That party must come forth with evidence that the calculated award is unjust, inappropriate or not in the best interest of the children. Murray v. Murray (1999),128 Ohio App.3d 662, 671. Assuming arguendo that appellee came forth with such evidence, the trial court calculated two distinct downward deviations from that evidence.
 {¶ 52} The lower court made no findings as to the value of the alleged services provided by appellee and how they should impact his support obligation under R.C. 3113.215. Rather, in support of a massive downward deviation, the trial court held that the guidelines award was not in the best interest of the children. Accordingly, the trial court essentially held that it was not in the best interest of the children to receive more support from their father.
 {¶ 53} As noted above, the guidelines award did not approach equalizing the parties' incomes. Further, no evidence was presented that such a support order would place an undue hardship on appellee. As such, there is no support in the record for the trial court's determination that the amount of support as calculated by the guidelines was not in the best interest of the children. Additionally, the trial court made no findings to support the inordinately large downward deviation from the child support guidelines. Accordingly, I would find that the trial court abused its discretion in deviating downward from the child support guidelines.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)